IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICKEY RUSSELL, | |
| Plaintiff, | Case No. 23 C 3682 |
| v. | Honorable Sunil R. Harjani |
| MICHELLE BOGLE, KRIS BOGLE, HASINA JAVED, FAIZA KAREEMI, DREW BECK, QUINTON IVY, JAMES PATRICK CORCORAN, M.D., THOMAS ZUBIK, MICHAEL MCCOTTER, DANIEL DYSLIN, PETER NEUMER, and GRACE B. HOU, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

    In this lawsuit, Plaintiff alleges that from late 2015 through October 2022, while he was confined at Elgin Mental Health Center (EMHC) and Chester Mental Health Center (CMHC) or on conditional release, he was abused and seduced into a sexual relationship by Michelle Bogle, a security therapy aide at EMHC. Plaintiff alleges that Defendants Kris Bogle, Hasina Javed, Faiza Kareemi, Drew Beck, Quinton Ivy, James Corcoran, Thomas Zubik, Michael McCotter, Daniel Dyslin, Peter Neumer, and Grace B. Hou (the "Eleven Defendants" or "Defendants") were aware of the relationship between Russell and M. Bogle but failed to take any action to stop the abuse. As a result, Plaintiff alleges the Defendants were acting under color of law in their official capacities and violated his substantive and procedural due process rights under the Fourteenth Amendment.[1] The Eleven Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), claiming that the Court lacks subject matter jurisdiction and that the Complaint fails to state a claim upon which relief can be granted. For the reasons stated below, the Eleven Defendants' motion [28] is granted in part and denied in part.

**Discussion**

    Plaintiff moves to dismiss the Complaint based on Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion tests whether the Court has subject-matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for*

---

[1] Count III is a civil claim for battery against only Defendant M. Bogle. As M. Bogle has not moved to dismiss the Complaint, the Court does not address Count III.

*Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). The Court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Heredia v. Capital Management Services, L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). However, a complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### *Rooker-Feldman* Doctrine

The Eleven Defendants contend that the Court lacks jurisdiction over Plaintiff's claims, because they are barred by the *Rooker-Feldman* doctrine since they involve his involuntary commitment and are thus "inextricably intertwined" with that state court judgment. Plaintiff responds that he is not challenging the duration of his involuntary confinement, so *Rooker-Feldman* doctrine does not apply. Federal courts generally lack jurisdiction to review the decisions of state courts. The *Rooker-Feldman* doctrine precludes lower federal court jurisdiction over claims made in state court and claims that are inextricably intertwined with state court determinations "no matter how erroneous or unconstitutional the state court judgment may be." *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 390 (7th Cir. 2019) (quoting *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008)). To put it simply, "[w]hen a state court judgment is the cause of a plaintiffs' injury, *Rooker-Feldman* bars federal review." *Id.* at 391. Plaintiff contends that he is not challenging any of the transfers during his confinement or the duration of his confinement, so the *Rooker-Feldman* doctrine does not apply.

Plaintiff's view of what he is challenging is too narrow. The inquiry is not limited to whether a plaintiff is directly challenging the state court's order; it asks whether the plaintiff's claims are inextricably intertwined with state court determinations. For example, in *Gunderson v. Corcoran*, the plaintiff was adjudicated not guilty by reason of insanity and committed to a state health facility, and alleged that the staff delayed his conditional release for approximately two years by falsifying documents and giving false testimony, which resulted in plaintiff's petition being denied. No. 21-CV-04891, 2023 WL 6049914, at *4 (N.D. Ill. Sept. 15, 2023). The court found that claims related to the defendant's actions that caused delay in the state court's grant of

conditional release were inextricably intertwined with a state court judgment because his alleged injuries from those claims were caused by the state court's ruling finding him not guilty by reason of insanity and denying his conditional release. Similarly in *Dopson v. Corcoran*, the plaintiff, who was adjudicated not guilty by reason of insanity and committed to a state health facility, alleged that he was emotionally and sexually abused by one of the staff members and that the other defendants allowed this to happen and kept him confined in violation of his rights. No. 19 C 5077, 2020 WL 3268513, at *1–2 (N.D. Ill. June 17, 2020). The court held that any claim that the plaintiff was being wrongfully detained was barred, as the challenge necessarily related back to the state court's decision on his conditional release. *Id.* at *7.

Plaintiff's claims are analogous to the claims in *Gunderson* and *Dopson*. Despite Plaintiff's protestations that he is not challenging the duration of his involuntary confinement, Plaintiff repeatedly alleges that Defendants' actions denied him accurate reports to the criminal court, which, if the reports had been accurate, the court could have ordered his release from custody. Plaintiff further contends in his Response that the Defendants' actions and omissions "created a false 'constitutionality' for the Plaintiff's involuntary confinement[.]" Doc. [33] at 9. These injuries were caused by the state court's rulings and what the Defendants told the state court in relation to his ongoing confinement, so they are subject to *Rooker-Feldman*.

Plaintiff tries to save his claims by pointing to Defendants' intentions and their bad faith actions, but *Rooker-Feldman* bars federal review of state court judgments even when the judgment was obtained through bad faith actions of the defendants. *Swartz*, 940 F.3d at 391. In *Swartz*, the plaintiffs alleged that the defendants worked in concert to make false claims of animal neglect to the state court, which resulted in the state court ordering the seizure of plaintiffs' livestock. In their § 1983 claim, the plaintiffs alleged that the seizure occurred with less than probable cause in violation of the Fourth and Fourteenth Amendments because it was based on false information given by the defendants. The Seventh Circuit held that this was "the type of claim routinely dismissed under *Rooker-Feldman*" because finding that the defendants acted wrongfully in seizing the animals would call into question the state court's judgment of there being probable cause that the animals were neglected under state law. *Id.* at 392. Similarly, Plaintiff claims that the Eleven Defendants acted to cover-up their own misconduct by falsifying his medical records that were reported to the state court when it evaluated whether Plaintiff should be released, which resulted in an extension of Plaintiff's involuntarily confinement. This, as in *Swartz*, is the type of claim that is dismissed under *Rooker-Feldman*, because finding the Defendants falsified the records would call into question the state court's decision to continue Plaintiff's involuntary confinement.

In further support of dismissal is the fact that Plaintiff had the opportunity to raise this claim in state court. *Rooker-Feldman* bars claims if the plaintiff had a "reasonable opportunity" to litigate them in state court. *Swartz*, at 392. Whether there was a "reasonable opportunity" turns on the difficulties imposed by factors other than the defendant's actions that "precluded a plaintiff from bringing federal claims in state court, such as state court rules or procedures." *Jakupovic v. Curran*, 850 F.3d 898, 904 (7th Cir. 2017) (cleaned up). In *Gunderson*, the court found that the plaintiff had a reasonable opportunity to raise the claim in state court because Illinois law provides for an insanity acquittee to petition for conditional release, which he did, and the plaintiff did not

3

argue that he was prevented to from raising the issue of the defendants providing false statements and evidence with the state court. *Gunderson*, 2023 WL 6049914, at *5. Similarly, here, Plaintiff alleges that he received a conditional release three times while the alleged conduct occurred and notably, he does not argue that he was prevented from raising the issue of the accuracy of his medical reports to the state court.

To the extent Defendants argue that all of Plaintiff's claims are barred by *Rooker-Feldman*, the Court disagrees. Courts routinely view claims regarding the condition of a detainee's confinement as separate from the underlying state court judgment. *See O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006) (holding *Rooker-Feldman* did not bar an inmate's Eighth Amendment claims against prison officers for their execution of a state court's force-feed order). Further, in both *Gunderson* and *Dopson*, the courts viewed the plaintiffs' allegations regarding sexual misconduct and their treatment during their confinement as challenges to the conditions of their confinement, which are not barred by *Rooker-Feldman*. Here, Plaintiff's claims related to his treatment during his confinement are likewise not inextricably intertwined with the state court's determinations because they relate to the conditions of his confinement. As such, challenges to a detainee's treatment are not barred by *Rooker-Feldman*. So, Plaintiff's claims related to his treatment during his confinement may continue.

## *Heck* Doctrine

The Eleven Defendants contend that Plaintiff's claims are barred by the *Heck* doctrine. As he did with *Rooker-Feldman*, Plaintiff argues that he is not challenging the duration of his involuntary confinement, so the *Heck* doctrine does not apply. The Supreme Court in *Heck* instructed that courts "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" when a state prisoner seeks damages in a § 1983 suit. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The Seventh Circuit applies *Heck* to Section 1983 plaintiffs who were civilly committed by a state court. *Henderson v. Bryant*, 606 F. App'x 301, 304 (7th Cir. 2015). That means Plaintiff cannot use his Section 1983 suit to challenge his state court involuntary confinement.

When applying *Heck*, the question for the Court is whether a judgment in favor of Plaintiff would necessarily imply the invalidity of his involuntary commitment. In *Gunderson*, the court held that the plaintiff's complaints that his constitutional rights were being violated because the defendants interfered with his ability to obtain a conditional release by knowingly giving false testimony and falsifying evidence, were barred by *Heck*. *Gunderson*, 2023 WL 6049914, at *7. The court reasoned that it was the state court who retained control over assessing the evidence presented when the plaintiff petitioned for conditional release. As described above, despite Plaintiff's insistence, his allegations relate to the Defendants providing inaccurate reports of his medication condition and progress to the state court resulting in an extension the length of his involuntary confinement. These claims are caused by the state court's rulings regarding his ongoing commitment and are barred by *Heck*.

4

However, *Heck* does not bar claims challenging the conditions and plaintiff's treatment during his confinement. *Wilkinson v. Dotson*, 544 U.S. 74, 84 (2005); *Henderson v. Bryant*, 606 F. App'x 301, 304 (7th Cir. 2015). In *Henderson*, the Seventh Circuit held that the plaintiff's § 1983 claim for damages for conditions of his confinement and alleged abuses by the defendants did not imply the invalidity of his confinement, and thus were not a bar to his claim. *Henderson*, at 304. Similarly in *Dopson*, the plaintiff alleged that he was emotionally and sexually abused by one of the staff members, which the other defendants allowed to happen and also kept him confined in violation of his rights. *Dopson*, 2020 WL 3268513, at *1–2. While the court dismissed the claims relating to the term of his confinement, it allowed the plaintiff to proceed to discovery on the substantive due process claims for the unconstitutional conditions of his confinement. *Id.* at *5. Similarly, Plaintiff alleges that the Defendants improperly treated him by allowing M. Bogle's sexual abuse to continue. As such, *Heck* does not bar those claims since they challenge the conditions of his confinement and not the confinement itself.

In conclusion, *Heck* bars portions of Plaintiff's claims in so far as they challenge the state court's rulings or the injuries stemming from those rulings, including the length of his confinement. However, Plaintiff's claims regarding his treatment and the conditions of his confinement may continue.

**Count II: Procedural Due Process**

Defendants further contend that Plaintiff did not adequately allege a procedural due process claim in Count II. Plaintiff responds that the Defendants "mischaracterize the Plaintiff's conception of his due process rights as a right to accurate medical records, plus a right to accurate court reports." Doc. [33] at 5. Plaintiff also states that he has a protected interest in the integrity of his body and his emotions.

A careful reading of the Complaint disputes Plaintiff's view of his own allegations. In Count II, Plaintiff alleges he "had a protected interest in accurate documentation of his progress which could have enabled the court to order his release from custody[.]" Comp. [1] ¶ 45. However, even if the Court were to understand Plaintiff's procedural due process claim as alleging an injury to his protected interest in his bodily integrity, Plaintiff's claims are barred by the *Rooker-Feldman* and *Heck* doctrines.

As detailed above, the Court does not have jurisdiction over claims "inextricably intertwined" with a state court judgment or that challenge the duration of Plaintiff's confinement. Plaintiff's procedural due process allegations involve what the Defendants did that made his involuntary confinement unconstitutional and that may have extended his involuntary confinement, which are direct challenges to the state court judgement. The Court does not have jurisdiction over such challenges. To the extent any of Plaintiff's procedural due process claim survive *Rooker-Feldman*, it would be barred by *Heck*, which bars § 1983 claims where judgment in favor of the plaintiff would necessarily imply the invalidity of his state court sentence. As discussed above, Plaintiff's procedural due process claim implicates the state court's rulings and

proceedings and is barred by *Heck*. After reviewing the allegations in Count II, the Court finds that it is barred in its entirety by the *Rooker-Feldman* and *Heck* doctrines.[2] As such, the Court dismisses Count II for lack of federal jurisdiction, but without prejudice to the merits.[3]

### Statute of Limitations

Plaintiff claims that M. Bogle began sexually abusing him in 2015 and abused him continuously until October 2022, all while the Eleven Defendants failed to intervene. The Eleven Defendants assert here that all claims prior to June 12, 2021 are barred by the statute of limitations. Plaintiff responds that the statute of limitations does not bar the pre-June 12, 2021 conduct because the Defendants' tortious conduct was continuous and the Defendants fraudulently concealed from Plaintiff the fact that he was being injured. Plaintiff also alleges that he was in custody after being adjudicated not guilty by reason of insanity and thus was mentally disabled and incapacitated during the entire period.

Section 1983 claims do not have a built-in statute of limitations; instead they borrow from the statute of limitations and tolling rules for analogous personal-injury claims in the forum state. *Talevski by next friend Talevski v. Health & Hosp. Corp. of Marion Cnty.*, 6 F.4th 713, 721 (7th Cir. 2021), *aff'd sub nom. Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023). In Illinois, the limitations period for personal-injury torts is two years. 735 Ill. Comp. Stat. 5/13-202. Generally, a claim under § 1983 accrues "when the plaintiff has a complete and present cause of action," at which point the plaintiff either knows or should know his constitutional rights have been violated. *Towne v. Donnelly*, 44 F.4th 666, 670–71 (7th Cir. 2022) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (cleaned up).

Plaintiff, of course, is uniquely situated for determining when the statute of limitations began to run and if it was tolled because his claims arose while he was in custody at a state mental health facility and suffered the alleged abuse. But this raises the question of whether Plaintiff was under a legal disability or if he had the legal capacity to know his constitutional rights had been violated, which can possibly toll the statute of limitations.

Section 1983 claims use the forum state's tolling rules and Illinois does allow for tolling when a plaintiff is under a "legal disability." 735 Ill. Comp. Stat. 5/13–211(a). "Under Illinois law

---

[2] Plaintiff cited no case law to support his position that the *Heck* and *Rooker-Feldman* doctrines do not apply and did not explain how any portion of his procedural due process claim would not be implicated by the *Heck* and *Rooker-Feldman* doctrines. A failure to respond to an alleged deficiency in a motion to dismiss acts as a waiver. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1054 (7th Cir. 2019) (affirming the dismissal of a complaint when the plaintiffs merely discussed the importance of the dispute and failed to address the controlling case law).

[3] *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("When the *Rooker–Feldman* doctrine applies, there is only one proper disposition: dismissal for lack of federal jurisdiction. . . . the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits.").

a person suffers under a legal disability if that person is 'entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs.'" *Goodman v. Cook County*, 697 Fed. Appx. 460, 461 (7th Cir. 2017) (quoting *Estate of Riha v. Christ Hosp.*, 544 N.E.2d 403, 405 (1989)). Illinois courts have held that the "purpose of tolling provisions is 'to protect the rights of those who are not competent to do so themselves.'" *Gavlin v. Adventist Bolingbrook Hosp.*, 2022 IL App (3d) 200282, ¶ 16 (quoting *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 454 (1997)). Illinois courts also impose a "discovery rule" to determine when the statute of limitations begins to run, which starts when the "injured party knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Haskins v. Midwest Air Traffic Control Serv., Inc.*, No. 12-CV-04584, 2014 WL 6980574, at *2 (N.D. Ill. Dec. 10, 2014).

Defendants contend that because Plaintiff was conditionally released into the community, this suggests that his mental condition had improved and that he knew and understood what was happening. That very well might have been true, but it is not what was alleged in the Complaint. The Complaint alleges that Plaintiff had a mental disability and that he was in custody at a state-run mental health facility because he was adjudicated not guilty by reason of insanity. There are no allegations regarding how Plaintiff's mental health improved or the terms of his conditional release.

The Complaint does not address if Plaintiff was under a legal disability or when that might have started. But "a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Thus, a complaint does not fail to state a claim because it omits facts that would defeat a statute of limitations defense. *Id.* Consequently, the fact that Plaintiff's failure to plead when he was no longer legally disabled and capable of discovering his injury does not necessarily result in the Complaint being dismissed.

Instead, when there is an issue of fact relating to a plaintiff's ability to discover his injury, courts will generally not dismiss the claim. For example, in *Haskins*, the court denied the defendants' motion to dismiss because the question of whether the plaintiff's mental disability prevented her from discovering her injury required some factual development. *Haskins*, 2014 WL 6980574, at *3–4. Similarly, in *Wolfgram v. Miller*, the plaintiffs alleged that they did not remember their repressed memories of being sexual abused as children and the court refused to dismiss the plaintiffs' claims as untimely because the complaint did not clearly demonstrate that the claims were barred by the statute of limitations. No. 21-CV-02755, 2023 WL 6388729, at *7 (N.D. Ill. Sept. 30, 2023). Accepting Plaintiff's allegations as true, he was an involuntarily committed mental patient in the state's care and custody after being adjudicated not guilty by reason of insanity. While he was conditionally released on three occasions during this time, whether Plaintiff's condition had improved sufficiently for him to be legally competent and when that occurred, is not clear from the Complaint. Accordingly, and although a more developed record may show that Plaintiff was legally competent enough to know he had a cause of action and stop the tolling, it is premature to dismiss Plaintiff's claims when the Complaint does not clearly

demonstrate that the statute of limitations bars his claims. Defendants may re-raise the issue of the statute of limitations after some factual development.[4]

### Personal Involvement

The Eleven Defendants further contend that Plaintiff failed to allege the personal involvement required to state a claim against Defendants Javed, Kareemi, Beck, Zubik, McCotter, Neumer, Dyslin, and Hou.[5] Plaintiff brings his claims for failure to intervene[6] under § 1983 which "creates a cause of action based on personal liability and predicated upon fault." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). A defendant is liable under Section 1983 only if he was "personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). Section 1983 does not impose liability for the supervision of others, instead the "personal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent." *Id.* A claim against a supervisor "must plausibly allege that the supervisor played some role in the conduct through facilitation, approval, or turning 'a blind eye for fear of what they might see.'" *Hess v. Garcia*, 72 F.4th 753, 768 (7th Cir. 2023) (quoting *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022)).

The Defendants contesting their personal involvement can be split into two groups: the treating defendants and the Illinois Department of Human Services (IDHS) defendants. The Court will first address the treating defendants.

---

[4] The Parties also contest whether the continuing violation and fraudulent concealment doctrines should apply. The Court reserves ruling on whether those doctrines apply until it determines whether Plaintiff had a legal disability and when such disability ended for the purpose of tolling the statute of limitations.

[5] The Eleven Defendants do not contest the personal involvement for Kris Bogle and Quinton Ivy in their motion to dismiss. Defendants raise the issue of personal involvement for Corcoran for the first time in their reply. The Seventh Circuit has long held that arguments raised for the first time in reply briefs are waived. *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020). As such, the Court will not review the allegations of personal involvement for Corcoran.

[6] The Parties disagree on what standard applies to deliberate indifference cases involving a mentally disabled adult who is involuntarily committed to a state mental health facility. Plaintiff advocates for the modified deliberate indifference standard used in *J.H. ex rel. Higgin v. Johnson*, which allows for defendants to be held liable if they had personal "knowledge or suspicion of the risk of harm[.]" Doc. [33] at 10; 346 F. 3d 788, 792 (7th Cir. 2003). This standard was recently applied in a factually similar case in this district. *See Hurt v. Javed*, No. 17 C 7909, 2024 WL 640849, at *6–7 (N.D. Ill. Feb. 15, 2024). The Defendants argue that the "actual knowledge" standard should be used. Doc. [39] at 3-10. The issue of what standard should apply in cases involving a mentally disabled adult who is involuntarily committed to a state mental health facility is currently on appeal to the Seventh Circuit. *See Hurt v. Javed*, No. 17 C 7909, 2024 WL 640849 (N.D. Ill. Feb. 15, 2024), *appeal docketed*, No. 24-8014 (7th Cir. May 22, 2024). As the outcome for each Defendant would be the same on this motion to dismiss, the Court need not decide which standard to apply at this time.

**Treating Defendants.** Plaintiff alleges that three of the Defendants were directly involved in his treatment while he was at EMHC: Javed (treating psychiatrist), Kareemi (treating psychiatrist), and Beck (treating social worker). Plaintiff alleges that he was transferred between various clinical units at EMHC and to CMHC in order to separate him from M. Bogle and to keep their relationship a secret. Plaintiff alleges that Javed, Kareemi, and Beck approved and oversaw these transfers. Plaintiff further alleges that Javed, Kareemi, and Beck "falsified records in the Plaintiff's psychiatric chart to make him appear as a mentally ill or actively psychotic problem patient[.]" Compl. [1] ¶ 40(f). These allegations are substantially similar to the allegations against the treating defendants in *Hurt v. Corcoran*, No. 17 C 7909, 2019 WL 3842819, at *8 (N.D. Ill. Aug. 15, 2019). In *Hurt*, the court found that allegations that many staff expressed frequent suspicions and the plaintiff's perceptions of other individuals' thoughts were insufficient to establish personal involvement. But an allegation that plaintiff's treating psychiatrists falsified his medical records to falsely implicate him was sufficient for the court to infer the defendants would not have falsified the records without a reason, and the reason could be that they knew or sought to cover up inappropriate sexual activity. *Id.* Here, Plaintiff alleges that Javed, Kareemi, and Beck were Plaintiff's treating psychiatrists and social worker, so the Court can infer on a motion to dismiss that they would not falsify documents and transfers unless they knew or suspected misconduct, which could be the sexual relationship with M. Bogle that Plaintiff alleges occurred in his Complaint. Under notice pleading, this is sufficient for Plaintiff's claims against Javed, Kareemi, and Beck to move on to discovery.

Plaintiff similarly alleges that Zubik, an EMHC administrator, participated in the decisions to transfer Plaintiff between various clinical units at EMHC and to CMHC to separate him from M. Bogle and to keep their relationship a secret. The Complaint further alleges that Zubik saw the OIG reports containing details about M. Bogle being in an improper sexual relationship with Plaintiff. Drawing all inferences in Plaintiff's favor, the allegations in the complaint suggest that Zubik was aware of the relationship between Plaintiff and M. Bogle and he was involved in the decisions to transfer Plaintiff to hide the alleged misconduct. This is sufficient, although just barely, to allege the Zubik was personally involved in Zubik's care and was aware of and involved in the alleged conduct.

**IDHS Defendants.** Plaintiff has not alleged personal involvement on the part of the three IDHS Inspector Generals named in the Complaint: McCotter, Neumer, and Dyslin. Plaintiff does not allege that McCotter, Neumer, or Dyslin investigated any of his OIG reports or that they were even involved in those investigations. Instead, Plaintiff alleges that as Inspector Generals, these Defendants had "supervisory jurisdiction" over complaints at EMHC and that they would have received copies of all the OIG allegations and would be aware of his "high profile" complaints. This is insufficient to allege they were personally involved in the deprivation of Plaintiff's rights, as these allegations fail to allege any direct conduct by the Defendants against Plaintiff. Further, the Seventh Circuit has found that allegations against a supervisor are insufficient when they fail to allege how their subordinates committed the deprivation and who the subordinates were. *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022). Here, Plaintiff did not allege any subordinates of McCotter, Neumer, and Dyslin, what their subordinates did to deprive plaintiff of

his rights, or how the Defendants condoned, facilitated, or approved their subordinates' conduct. As such, Plaintiff's allegations fail to allege personal involvement by McCotter, Neumer, and Dyslin.

Similarly, Plaintiff fails to allege personal responsibility for Hou, who was Secretary of the IDHS during the relevant timeframe. Plaintiff alleges that Hou was asked to review Plaintiff's transfer to CMHC because it made it more difficult for him to access his legal counsel and that Hou "refused or neglected to provide any effective review" of his request. Plaintiff does not allege that Hou knew of Plaintiff or of any of the conduct alleged in the complaint. Plaintiff also fails to cite any authority that would imply knowledge or suspicion to a head of a state agency merely because a request to review a transfer was filed by an individual in custody. Indeed, such a proposition is contrary to existing Seventh Circuit case law, which rejects claims of personal liability for a well-informed official merely because constitutional violations occurred within their jurisdiction as "such a broad theory of liability is inconsistent with the personal responsibility requirement for assessing damages against public officials in a section 1983 action". *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir. 1982). Put another way, even if an official is aware of the constitutional violation, they are not liable under § 1983 unless the violation occurred at the official's direction or with their knowledge and consent. *Volk v. Coler*, 845 F.2d 1422, 1432 (7th Cir. 1988). Here, even assuming that Hou was aware of the alleged misconduct, Plaintiff failed to allege any personal involvement by Hou that could plausibly demonstrate her approval or facilitation of the misconduct alleged in the Complaint.[7]

Accordingly, the Court dismisses Count I as to Defendants McCotter, Neumer, Dyslin, and Hou.

**Conclusion**

For the reasons stated above, the Eleven Defendants' motion to dismiss [28] is granted in part and denied in part. Count II is dismissed for lack of federal jurisdiction, but without prejudice to the merits. Count I is dismissed without prejudice as to Defendants McCotter, Neumer, Dyslin, and Hou and Plaintiff may refile an amended complaint on that count if he can cure the deficiencies and such an amendment is consistent with his obligations under Federal Rule of Civil Procedure 11. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment

---

[7] Defendants also contend the Hou is entitled to quasi-judicial immunity. As the claims against Hou have been dismissed on other grounds, the Court does not reach this argument.

be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). Regardless, an amended complaint is due by June 18, 2024.

**SO ORDERED.**

Dated: May 28, 2024

_____
Sunil R. Harjani
United States District Judge

11